The STATE OF MONTANA ex rel. C. B. BLACKWOOD AND BOYD BOYLAN, Plaintiffs and Appellants, v. MARY LUTES, County Superintendent of Schools of Gallatin County, Montana, and School District No. 7, Gallatin County, Montana, Defendants and Respondents.

No. 10581

Submitted April 11, 1963. Decided May 8, 1963.

381 P.2d 479.

Lyman H. Bennett, Jr., Joseph B. Gary, Bozeman, for appellants.

Page Wellcome, County Atty., Bozeman, Robert L. Word, Sp. Asst. Atty. Gen., Donald A. Garrity, Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

In this appeal a petition was made to this court on April 11, 1963, for an injunction pendente lite under circumstances hereinafter set out. The court issued an order to show cause directed to the respondents returnable on April 18 to show cause why the respondents should not be enjoined from issuing or delivering bonds for the erection of a junior high school building or for acquisition of lands for the same.

On the return day, respondents appeared and made the return, and prayed that this court dissolve its temporary restraining order. On the return, much of the district court file was submitted, but none of the testimony received in the district court was brought up. The district judge filed an opinion on March 26, 1963, which is herein set forth. From it, the circumstances appear.

"School District 7 in Gallatin County embraces a substantial part of the City of Bozeman. The voters of this District at a bond election, by a substantial margin, approved a proposal to bond the District * * * for the estimated cost of construction of a new Junior High School and elementary school in the amount of $1,989,000.00.

"Some of those opposed have thus far been successful in preventing the consummation of the purpose of the election. To the County Superintendent, on December 7, 1962, they presented a petition to carve out of School District 7 a certain area for a new District. It was denied on February 6, 1963, and an appeal to the County Commissioners resulted in a unanimous affirmation by the County Commissioners of the ac-

tions of the County Superintendent. (See Section 75-1805, R.C.M.1947). The appeal to the County Commissioners forestalled the calling of the bids for the sale of the bonds.

"While the matter was in process of appeal to the County Commissioners an Injunction was granted, enjoining the sale of the bonds until action by the Board of County Commissioners. That bond was exonerated after the Commissioners had affirmed the County Superintendent.

"A stipulation was entered into by counsel for the petitioners and counsel in the instant case reading as follows:

" 'IN THE MATTER OF THE APPEAL FROM THE ORDER OF THE COUNTY SUPERINTENDENT OF SCHOOLS DENYING THE PETITION TO FORM A NEW SCHOOL DISTRICT OUT OF THE SCHOOL DISTRICTS FORMERLY KNOWN AS LEVERICH, FOWLER AND MIDDLE CREEK.

" 'IT IS HEREBY STIPULATED AND AGREED by and between counsel for appellants herein, counsel for those in opposition to the appeal, and counsel for School District #7, of Gallatin County, Montana, that there will be no further appeal, litigation, or extraordinary remedy sought, and no further action of any type whatsoever will be taken, to appeal from review or otherwise correct or control the decision of the Board of County Commissioners of Gallatin County, Montana, denying the appeal in the above-entitled matter and affirming the order of the County Superintendent of Schools previously made and entered.

" 'Dated this 18 day of February, 1963.

" '/s/ LYMAN H. BENNETT, Jr.
Attorney for Petitioners and Appellants

" '/s/ JOSEPH B. GARY
Attorney for opponents to said Petition

" '/s/ PAGE WELLCOME
Attorney for School District #7'

"However, another Petition was filed with the County Superintendent of Schools for the same relief, on February 26, 1963. All of the signers of the Petition in the instant case were signers of the first Petition, with the exception of one person. The question of res adjudicata will be one of the issues in the trial of the case on the merits.

"The County Superintendent dismissed the Petition. No new District may be created between March 1st and July 1st.

(See Section 75-1804, R.C.M.1947) The Petition is required to be noticed for 10 days. However, it was filed February 26th, three days before the deadline. The County Superintendent on advice of the County Attorney took the position that such act justified a dismissal of the Petition. In a trial on the merits this becomes an issue.

"The instant action followed. It is a triple threat directed against the construction of the new School. It embraces: (1) Writ of review (which Writ of review is complete and supplements the injunction and mandamus relief asked); (2) Injunction; (3) Mandamus to force action by the County Superintendent who has dismissed the Petition filed February 26, 1963.

"The Injunction and Mandamus must be considered as one in effectively blocking further proceedings.

"It is agreed that the action itself in truth and fact enjoins the further progress of the District. Our Court has recognized the unity rule that Mandamus and Injunction are treated as one unit. State ex rel. Hoagland v. School District No. 13, 116 Mont. 294, 300, 151 P.2d 168, says:

" 'The courts may enforce the exercise of ministerial powers through the medium of mandamus, and may restrain their improper exercise by injunction. 46 C.J. § 103, p. 1094.' Mandatory injunction has often been held equivalent to mandamus and governed by like consideration. See Miguel v. McCarl, 54 S.Ct. 465, 291 U.S. 442, 78 L.Ed. 901.

"The plaintiff herein by mandatory injunction seeks to pre-

vent further proceedings and by mandamus to compel action by the County Superintendent directly contrary to what has heretofore been done. Consequently the Injunction and the Mandamus, irrespective of any wording that may appear in the Petition must be considered together otherwise the law is impotent.

"The architect is prevented as a practical matter from preparing construction contracts to be submitted for bids; no contractor could possibly, in the face of this litigation construct the building, knowing that he might not be paid. The undisputed testimony shows the bonding companies have no substantial interest in bidding for bonds with litigation pending. The call for bids on the bonds is April 9th, and must be further delayed.

"Evidence was heard by the Court on the 21st day of March, 1963, which shows that should the building eventually be built the delay by litigation, will cost the District and its' taxpayers approximately $140,000.00 to $150,000.00 more. Some of the items are as follows: As testified by the architect, $30,000.00 increase in construction costs; by the School Clerk, a less favorable interest rate of $\frac{1}{4}$ of 1% on bonds, $43,000.00; increased cost of equipment, $9,000.00. Other items such as re-advertising, paving, probable loss of two sites, now under option for $35,000 and one for $45,000.00.

"Those instituting these proceedings should have a full opportunity to assert their rights at a hearing on the merits, provided they protect the District. (See Section 93-4206, R.C.M.1947) and its people from any financial loss. If petitioners are right they will not suffer any loss, if they are wrong then it is only fair that they should by a good and sufficient bond protect the District and its' taxpayers from the increased costs due to the delay in construction occasioned by the delay.

"The Writ of Injunction is an extra-ordinary writ and our Supreme Court has repeatedly said that it should never be permitted unless the petitioner is in danger of losing a substan-

tial right, and that at all times one in so asserting such a right must protect the other party from injury, should it appear that the injunction should not have been granted.

"The Court is going to grant an Injunction upon the petitioners complying with the Order made contemporaneously herein fixing the amount of the bond at $100,000.00 which is substantially less than the proof shows that the potential damages may be.

"Dated this 26th day of March, 1963.

LESTER H. LOBLE
_____
Judge Presiding"

As hereinbefore noted, only an abbreviated record is before us, and we do not have the testimony received by the district court referred to in the opinion previously quoted. Without the testimony, we will assume the district court's opinion and order to be correct.

Here now, the relators seek an injunction pending appeal which would have been granted them in the district court had they seen fit to post the $100,000 bond ordered by Judge Loble. From the record before us, in view of the size of the bond issue and the other factors recited in the order and opinion of the district court, we cannot say that the bond was unreasonable.

Injunctions are extraordinary remedies, granted with caution, and in the exercise of sound judicial discretion. Treating this matter as one of review of the trial court's actions, we cannot say that the trial court abused its discretion. The relators here have failed to establish a *prima facie* case for an injunction pending appeal and for that reason we are dissolving our temporary injunction heretofore issued on April 11, 1963, as having been improvidently issued and the matter is dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, ADAIR and DOYLE, concur.